IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ELIZABETH M. ORR                                                              PLAINTIFF

V.                          CASE NO. 5:15-CV-05098

CITY OF ROGERS                                                               DEFENDANT

## OPINION & ORDER

Currently before the Court is a Motion to Reconsider (Doc. 48) filed by Defendant City of Rogers (the "City") on February 9, 2017. Plaintiff Elizabeth Orr filed a Response (Doc. 55) on February 22, 2017, and the City replied a day later (Doc. 58). For the reasons detailed herein, the City's Motion is **DENIED**.

## I. DISCUSSION

The Court entered a Memorandum Opinion and Order (Doc. 46) dismissing all but one of Orr's discrimination claims against the City.[1] The one remaining claim is a failure to accommodate claim brought pursuant to the Americans with Disabilities Act, the Rehabilitation Act, and the Arkansas Civil Rights Act. The City asks the Court to reconsider its denial of summary judgment as to this surviving claim. The City believes that the Court erred in denying it summary judgment for two reasons. First, it contends that Orr did not properly raise a failure to accommodate claim, both because she did not assert such a claim in her EEOC charge, and because her Amended Complaint (Doc. 13) fails to state such a claim. Instead, the City suggests that Orr raised her failure to accommodate claim for the first time in her Response to the City's Motion for Summary

---

[1] The facts of this case are set forth in detail in that Opinion, and for the sake of brevity do not warrant recounting herein.

1

Judgment (Doc. 36). Second, it believes the Court denied summary judgment solely based on Orr's self-serving affidavit, which conflicts with her earlier testimony. The Court disagrees on both points.

As an initial matter, the Court finds that the City has waived its first argument—that Orr did not properly raise a failure to accommodate claim. The City had at least three clear opportunities to raise this argument prior to the Court's adjudication of its summary judgment motion, but failed to do so. If the City thought that Orr improperly raised her failure to accommodate claim for the first time in her Response Brief, it could have certainly said so in its Reply Brief (Doc. 39), but did not. Second, the City correctly points out that the Court's attorney emailed the parties' attorneys to ask Orr to clarify the source of her failure to accommodate claim in her Amended Complaint. (Doc. 48, pp. 4-5). What the City failed to add, however, is that Orr's counsel responded by identifying specific paragraphs in her Amended Complaint that comprised her failure to accommodate claim. Further, Orr's counsel cited to authority to support the proposition that her Amended Complaint was sufficient to assert the claim. If the City felt otherwise, it certainly had the opportunity to voice its disagreement at that point. Third, the Court held a hearing on the City's Motion for Summary Judgment on January 24, 2017. During the hearing, the Court received extensive oral argument and questioned both parties at length. It is even fair to say that the focus of the Court's questioning was on Orr's failure to accommodate claim. Not once did the City suggest that Orr's EEOC charge or her Amended Complaint failed to raise such a claim; it argued only that the claim could not survive summary judgment on its merits.

2

"A litigant that has previously been given a full and fair opportunity to argue an issue is not permitted to later make an argument that could have been, and should have been, raised earlier." *Mayo v. UBS Real Estate Sec., Inc.*, 2012 WL 2848002, at *3 (W.D. Mo. Jan. 13, 2012) (citing *Martin v. Am. Airlines, Inc.*, 390 F.3d 601, 609 n.4 (8th Cir. 2004), and *Elam v. Denney,* 2010 WL 3526270, at *8 n.3 (W.D. Mo. Sept. 3, 2010)). The City had multiple opportunities to raise the argument it now presents, but did not do so until it suffered an adverse ruling. It therefore waived the argument.

Assuming, *arguendo*, that the City did not waive its argument, the Court would still disagree with its position on the matter. With respect to the sufficiency of Orr's EEOC charge, the Court is mindful that it "should not use Title VII's administrative procedures as a trap for unwary *pro se* civil-rights plaintiffs." *Shannon v. Ford Motor Co.*, 72 F.3d 678, 685 (8th Cir. 1996). Accordingly, "when a plaintiff files an EEOC charge *pro se,* the charge must be read liberally." *Edwards v. WINCO Mfg. Co.*, 5 F. Supp. 2d 743, 749 (E.D. Mo. 1998).

Orr's EEOC charge mentions the denial of remedial training as a basis for her discrimination claim on three occasions. (Doc. 1-1). She wrote: (i) "After returning to work from an injury, I was denied remedial training around October 2013."; (ii) "I was not given a reason for being denied remedial training."; and (iii) "I believe I was denied remedial training because I was regarded as being disabled . . . ." *Id.* While it is true that Orr's third reference to remedial training appears to pertain to a disparate treatment type claim, that observation is insufficient to extinguish her ability to later bring a failure to accommodate claim. "Courts recognize claims as exhausted when they have been actually filed before the EEOC or when they are 'like or reasonably related to the allegations of the

3

administrative charge.'" *Edwards*, 5 F. Supp. 2d at 749 (quoting *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986)) (alteration omitted). The "reasonably related" standard means that the claims in a plaintiff's complaint "may be as broad as the scope of the EEOC investigation which could reasonably be expected to grow out of the charge of discrimination." *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988) (quotation omitted). This standard does not allow a court to "invent[], *ex nihilo*, a claim which simply was not made," *Shannon*, 72 F.3d at 685, but this is not what the Court is suggesting. By repeatedly referencing the City's failure to provide her remedial training as a discriminatory act, the Court believes that Orr's EEOC charge, at the least, reasonably relates to her failure to accommodate claim that is based on not receiving remedial training.

Turning to the sufficiency of Orr's Amended Complaint—an argument that the City has also waived—the Court begins by making the following observation: Orr's Amended Complaint "is not a model of the careful drafter's art." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). Too often, this Court receives complaints from plaintiffs that fail to clearly enumerate the legal theories upon which their claims rest, or only enumerate some such theories. The Court would encourage the bar to emphasize the importance of clearly enumerating legal theories in complaints in order to avoid needless confusion and unnecessary litigation.

That said, the City's argument that Orr's failure to accommodate claim would not survive a *Twombly / Iqbal* analysis misses the mark. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Those cases stand for the proposition that Rule 8(a)(2)'s notice pleading standard requires plaintiffs to plead *facts* sufficient to

show that their claims have substantive plausibility. *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014). They do not provide that plaintiffs must precisely articulate the *legal theories* supporting the claims they assert, *id.* at 346, though (as stated above) the Court certainly prefers that plaintiffs do so. Orr's Amended Complaint alleges that her supervisor denied her "the ability to receive additional training needed to properly operate the Dispatch Center while allowing other Dispatch personnel to receive such training." (Doc. 13, ¶ 32). And, it alleges that her supervisor "promised to provide Orr with 'remedial' training regarding what [her supervisor] characterized as deficiencies that Orr possessed as a Dispatcher, but [her supervisor] never provided any such training to Orr." *Id.* at ¶ 44. While these factual allegations could serve as a basis for a disparate treatment claim, a disabled person's request for training and subsequent denial thereof can also serve as the basis for a failure to accommodate claim. *See* Doc. 46, pp. 30-33. Accordingly, Orr's Amended Complaint states facts sufficient to survive a *Twombly / Iqbal* analysis.[2]

The Court proceeds next to the City's position that Orr's affidavit is self-serving and conflicts with her earlier testimony. First, the Court again finds that the City waived this argument by not raising it in its Reply Brief or at oral argument. But even had it not, the Court would find it to be unmeritorious. The City's contention goes to the question of whether the issues of fact surrounding Orr's failure to accommodate claim are *genuine* issues of material fact, such that "a reasonable jury could return a verdict" for Orr. *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson v.*

---

[2] To the extent that the City did not waive its argument, and to the extent that the Amended Complaint is somehow deficient, the Court would have provided Orr leave to amend her complaint to more precisely articulate her failure to accommodate claim anyway. *See* Fed. R. Civ. P. 15(a)(2) (instructing courts to give leave to amend "when justice so requires").

5

*Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986) and discussing "sham" issues of fact). The Eighth Circuit has, indeed, held that a plaintiff may not create a genuine issue of material fact by filing an affidavit that is inconsistent with her earlier deposition testimony. *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir. 1983). Thus, where a plaintiff testified during a deposition that he instructed a salesman to *delay* depositing a check, but then later submitted an affidavit swearing that he instructed the salesman to *not deposit and instead return* the check, summary judgment was appropriate. *Id.* at 1363-66. Similarly, in *Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286 (8th Cir. 1988), a plaintiff testified that he was told he was being terminated, but then later filed an affidavit declaring that he was told his position was being eliminated, but that his employment would continue in another capacity, *id.* at 288. The plaintiff's later statement "directly contradicted" his earlier testimony, and pertained to the decisive question of whether he could benefit from the equitable tolling of a limitations period. *Id.* at 289. The *Wilson* Court elaborated:

> While district courts must exercise extreme care not to take genuine issues of fact away from juries, a party should not be allowed to create issues of credibility by contradicting his own earlier testimony. Ambiguities and even conflicts in a deponent's testimony are generally matters for the jury to sort out, but a district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before. Otherwise, any party could head off a summary judgment motion by supplanting previous depositions *ad hoc* with a new affidavit, and no case would ever be appropriate for summary judgment.

*Id.* (internal quotations and citations omitted).

The Court does not believe that the testimony and affidavit in question constitute the type of direct contradiction or "sudden and unexplained revision" contemplated by *Camfield*

6

*Tires*, *Wilson*, and similar cases. Instead, it falls on the side of an ambiguity more properly resolved by the finder of fact.

The issue in question is the nature of Orr's alleged request for accommodation in the form of training. In its Memorandum Opinion and Order on the City's Motion for Summary Judgment, the Court relied on Orr's affidavit detailing her request. *See* Docs. 46, p. 33; 35-2, ¶¶ 9-12. That affidavit characterizes her request for training as pertaining to certain software updates and dispatch policies. (Doc. 35-2, ¶¶ 9-12). The Court founds that there were genuine issues of material fact about the reasonableness of Orr's request, and in doing so remarked that:

> [T]he particulars of Orr's request provide additional grounds for finding it to be reasonable. Viewing the facts in the light most favorable to Orr, she requested training on software and protocol changes that occurred while she was out of work or assigned to light duty. Obtaining additional training on these specific matters could provide "the disabled individual an *equal* employment opportunity, including an opportunity to attain the *same* level of performance . . . that is available to similarly situated employees who are not disabled." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (emphases added).

(Doc. 46, p. 33). The Court found Orr's characterization to be important (though not necessarily dispositive) in assessing the reasonableness of her request for training because a "broader training request—such as a request for 'A to Z' retraining—" may be unreasonable for an employee with her experience and position. *Id.*

The City brings to the Court's attention an excerpt from Orr's deposition testimony that it contends describes her request exactly as one for "A to Z" retraining. The testimony in question is worth reproducing in full.

> Q    And so this remedial training that you were requesting, what would that training have entailed? Would it have been going back through the training that you described you did when you first became a dispatcher?

7

> A     Well, the training was a lot different now from when I first became a dispatcher back in 2004. It was very structured and, you know, so I would have gone back through with Kelli Latham, the training coordinator, just back to the beginning and all the way through.
>
> Q     What do you mean "back to the beginning"?
>
> A     She printed the fire manual for me. We would have gone from page 1 all the way to the end of the fire manual, the fire training manual. We would have started at the beginning of the manual and worked through.

(Doc. 48-5, p. 2).

What the City leaves out, however, is the greater context of this excerpt. The deposition transcript reveals about five pages of questioning on Orr's request for training prior to the above excerpt. (Doc. 55-3). During that questioning, Orr specifically describes her need for training as arising from her inability to work as a dispatcher during her absence from work and period of recovery. *Id.* at 2-4. Then, as an example of her request for training being denied, she details a specific instance in which she requested remedial training "on the fire side." *Id.* at 4. She elaborates that the training coordinator "printed out the fire manual for me . . . and she [and Orr's supervisor] made a commitment to me . . . that I would go with [the training coordinator] and be remedial trained on fire side." *Id.* This fire-side remedial training, however, "never happened." *Id.* at 5. "I was never assigned to go with [the training coordinator] to have the training." *Id.*

With this added context, it is—at the least—reasonable to conclude that Orr's reference to going "back to the beginning and all the way through" pertained specifically to training she requested about fire emergency protocols. Orr very well may have interpreted defense counsel's question about "*this* remedial training that you were requesting" to pertain specifically to the aforementioned "fire side" example offered by

8

Orr. (Doc. 48-5, p. 2). That Orr requested training about that subject matter does not at all preclude the possibility that she requested training about other subject matter; there is no direct contradiction between her deposition testimony and her affidavit, there is at most ambiguity. *Wilson*, 838 F.2d at 289. Even if not waived, the City's "sham issue" argument would accordingly fall short.

For these reasons, the City's Motion to Reconsider is denied. In denying this Motion the Court is particularly cognizant that such motions are interpreted as falling within Fed. R. Civ. P. 60(b), *e.g.*, *Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir. 1999), which in turn offers "extraordinary relief" only in "exceptional circumstances." *Marshall v. Deutsche Bank Nat. Trust Co.*, 2011 WL 345988, at *1 (E.D. Ark. Feb. 1, 2011) (quoting *United States v. Young*, 806 F.2d 805, 806 (8th Cir. 1986)). This case presents no such occasion. Unless settled, the narrow issue of Orr's failure to accommodate claim will proceed to trial.

## II. CONCLUSION

For the reasons stated herein, the City's Motion to Reconsider (Doc. 48) is **DENIED**.

**IT IS SO ORDERED** on this 27th day of February, 2017.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE